# Supreme Court of Florida

———————

No. SC2025-1127

———————

**KAYLE B. BATES,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

———————

No. SC2025-1128

———————

**KAYLE B. BATES,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

August 12, 2025

PER CURIAM.

Over four decades ago, Kayle Barrington Bates robbed, attempted to rape, and brutally murdered Janet Renee White. For this conduct, a jury found him guilty of first-degree murder (and

other crimes) and recommended a sentence of death. Following that recommendation, the trial court sentenced him to death. On July 18, 2025, Governor Ron DeSantis signed a warrant for the execution of this sentence. Bates then filed his fourth successive motion for postconviction relief. The circuit court denied all his claims, and Bates appealed. Exercising our mandatory review jurisdiction, we affirm. We also deny Bates' petition for a writ of habeas corpus, a stay, and oral argument. *See* art. V, §§ 3(b)(1), (9), Fla. Const.

## I

In June 1982, Bates, a delivery driver, stopped at the insurance office where Renee[1] worked. After briefly speaking with Renee, Bates left. Later, Renee also left the office and met her husband for lunch.

While Renee was gone, Bates returned to the office. He hid his truck in the woods and broke into the building. There he waited for Renee. When she arrived, the office phone was ringing. As Renee answered the phone, she spotted Bates. Startled and terrified, she

---

1. The victim was known by her middle name.

let out a "bone-chilling" scream.  Bates attacked her, but Renee fought back.  Despite her best efforts, Bates overpowered Renee and forced her into the woods behind the office.

Once there, Bates brutally beat her, inflicting over thirty contusions, bruises, abrasions, and lacerations.  He ripped off her wedding ring, causing serious injury to her finger.  He attempted to rape her.  He strangled her.  And while Renee was still alive, Bates stabbed her twice in the chest.  She died from the totality of her wounds a few minutes later.

Bates was apprehended near the office about twenty minutes after the deadly attack began.  Law enforcement found Renee's ring in Bates' pocket despite his efforts to conceal it.  Bates admitted to carrying Renee out of the office to the woods and engaging in one-sided sexual conduct with her.  Bates also told his wife that he had killed a woman.

Consistent with Bates' sexual-conduct admission, both his and Renee's underwear contained evidence of semen.  Bates' hat and knife case were located not far from where Renee's body was found.  Cloth fibers matching Bates' pants were recovered on Renee's clothing.  A watch pin was found in the insurance office—

the same type of pin missing from Bates' watch. Law enforcement also located footprints matching Bates' shoes behind the insurance office.

The State charged Bates with first-degree murder, kidnapping, sexual battery, and armed robbery. *Bates v. State* (*Bates I*), 465 So. 2d 490, 491 (Fla. 1985). A jury found Bates guilty of first-degree murder, kidnapping, attempted sexual battery, and armed robbery and, after the penalty phase, recommended a death sentence. *Id.* At sentencing, the trial court found five statutory aggravators and one nonstatutory mitigator. *Id.* at 492. Ultimately, Bates was sentenced to death for first-degree murder, two life sentences for kidnapping and armed robbery, and fifteen years for attempted sexual battery. *Id.* at 491.

On direct appeal, this Court affirmed Bates' convictions but vacated his death sentence based on the conclusion that two of the aggravating factors were not adequately supported by the evidence. *Id.* at 493. In light of the vacatur, the Court remanded for the trial court to reweigh the remaining aggravators with the mitigator. *Id.* at 492-93.

On remand, and after hearing additional mitigating evidence, the trial court again imposed a death sentence. We affirmed. *Bates v. State* (*Bates II*), 506 So. 2d 1033, 1034 (Fla. 1987). Two years later—after Governor Bob Martinez signed a death warrant for Bates—Bates moved for postconviction relief and a stay of execution. *See Bates v. Dugger* (*Bates III*), 604 So. 2d 457, 458 (Fla. 1992). The circuit court granted Bates a new penalty phase but denied all claims seeking to vacate the murder conviction. *Id.* On appeal, this Court affirmed the lower court in all respects. *Id.* at 458-59.

At his ensuing penalty phase, the jury recommended death by a nine-to-three vote. *Bates v. State* (*Bates IV*), 750 So. 2d 6, 9 (Fla. 1999). The trial court, for its part, found three aggravators: (1) Bates committed the murder while committing two other serious felonies; (2) Bates committed the murder for pecuniary gain; and (3) the murder was especially heinous, atrocious, and cruel (HAC). *Id.* The court found two statutory mitigators: (1) no significant prior criminal history; and (2) his relatively young age when he committed the murder (24 years old). *Id.* Additionally, the court found eight nonstatutory mitigators: (1) Bates' emotional distress at

- 5 -

the time he committed the murder; (2) Bates' ability to follow the law was impaired to a certain degree; (3) Bates' family background; (4) Bates' military service; (5) Bates' patriotism and service as a soldier; (6) Bates' low-average IQ; (7) Bates' love and support for his wife and children; and (8) Bates' good employment record. *Id.* After making these findings, the trial court weighed the aggravators and mitigators, ultimately determining that the aggravating factors outweighed the mitigating circumstances and thus warranted imposition of the death penalty. *Id.* Bates appealed, but we affirmed his sentence. *Id.* at 18.

After the United States Supreme Court denied review,[2] Bates initiated a new batch of postconviction challenges directed at his conviction and sentence. Bates first claimed various constitutional and state-law violations and requested DNA testing. *Bates v. State* (*Bates V*), 3 So. 3d 1091, 1098-1106 (Fla. 2009). We affirmed the circuit court's order denying his claims and his DNA-related request. *Id.* at 1105-06. We also denied Bates' habeas corpus petition. *Id.* at 1107.

---

2. *Bates v. Florida*, 531 U.S. 835 (2000).

Bates then turned to the federal courts, asking for the issuance of a writ of habeas corpus. But the District Court for the Northern District of Florida denied relief, and the Eleventh Circuit Court of Appeals affirmed. *Bates v. Sec'y, Fla. Dep't of Corr.* (*Bates VI*), 768 F.3d 1278, 1287 (11th Cir. 2014), *cert. denied*, 577 U.S. 839 (2015).

Undaunted by these adverse rulings, Bates continued to seek collateral relief. *See Bates v. Jones* (*Bates VII*), No. SC16-1199, 2016 WL 6205332, at *1 (Fla. July 18, 2016) (striking Bates' habeas petition without prejudice); *Bates v. State* (*Bates VIII*), 218 So. 3d 426, 427 (Fla. 2017) (affirming circuit court's denial of Bates' successive postconviction motion); *Bates v. State* (*Bates IX*), 238 So. 3d 98, 98-99 (Fla. 2018) (affirming circuit court's denial of Bates' successive postconviction motion and denying Bates' habeas petition); *Bates v. State* (*Bates X*), 398 So. 3d 406, 406-08 (Fla. 2024) (affirming circuit court's denial of Bates' successive postconviction motion).

Bates also petitioned in federal court to reopen his habeas proceeding under Federal Rule of Civil Procedure 60(b)(6). *Bates v. Fla. Dep't of Corr.* (*Bates XI*), No. 5:09-cv-00081-MCR (N.D. Fla. July

24, 2025). Specifically, he requested that the court reassess his federal habeas claims without applying the deferential standard required by the Antiterrorism and Effective Death Penalty Act, codified in part at 28 U.S.C. § 2254(d)(1). In Bates' view, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), rendered such deference unconstitutional. The federal district court denied his motion. *Bates XI*, No. 5:09-cv-00081-MCR, slip op. at 9, *certificate of appealability denied*, No. 25-12588 (11th Cir. Aug. 1, 2025).

This brings us to Bates' fourth successive postconviction motion—the motion at issue in this appeal. Bates raised constitutional challenges to the warrant period's length, the denial of his public records requests, the clemency process, and his death sentence. He also requested a stay. The circuit court denied relief on all Bates' claims and declined to hold an evidentiary hearing or issue a stay.

Bates now appeals, challenging most of the adverse rulings below. He also asks us to grant a stay of execution and issue a writ of habeas corpus.

## II

We begin with Bates' appeal. He challenges the circuit court's summary denial of his successive postconviction motion and its denial of his public records requests.[3]

## A

Starting with the Florida Rule of Criminal Procedure 3.851 claims, we review the summary denial of such claims de novo. As we have recently reiterated, we will affirm the denial of successive claims that are procedurally barred, untimely, legally insufficient, or refuted by the record. *See Hutchinson v. State*, No. SC2025-0517, 50 Fla. L. Weekly S71, S72, 2025 WL 1198037, at *3 (Fla. Apr. 25), *cert. denied*, 145 S. Ct. 1980 (2025).

### 1

Bates argues that the circuit court erred in denying his claim that evidence of his organic brain damage was inadequately considered during his second penalty phase. To support this claim, Bates points to multiple alleged shortcomings at the penalty phase,

---

3. Bates also appeals the circuit court's denial of his motion for a stay during pendency of these proceedings.

including that counsel failed to present testimony from Dr. Barry Crown and from lay witnesses who knew Bates and could have testified to his diminished mental state at the time of the murder. We reject this claim as untimely, procedurally barred, and meritless.

Under Florida Rule of Criminal Procedure 3.851(d), postconviction motions must be filed within one year of the judgment and sentence becoming final.[4] Rule 3.851 provides a narrow exception to this time bar for claims predicated on newly discovered evidence. Fla. R. Crim. P. 3.851(d)(2)(A). But, any claims based on that evidence must still be filed within a year of the date the evidence could have been discovered. *Wainwright v. State*, 411 So. 3d 392, 401 (Fla.), *cert. denied*, No. 24-7365, 2025 WL 1621505 (U.S. June 9, 2025).

Bates' claim is untimely. He was resentenced in 1995, and he could have raised these arguments in the thirty years since. He has not offered any persuasive reason why this evidence is newly discovered or timely now. *See id.*

---

4. Bates' judgment and sentence became final in 2000.

However, even assuming that timeliness would not preclude relief, Bates faces another challenge. We have recognized that claims previously raised and rejected on the merits cannot form a basis of relief, and we have not hesitated to apply this bar in the warrant context. *See Barwick v. State*, 361 So. 3d 785, 794-95 (Fla.), *cert. denied*, 143 S. Ct. 2452 (2023); *Zakrzewski v. State*, 50 Fla. L. Weekly S218, S220, 2025 WL 2047404, at *4 (Fla. July 22), *cert. denied*, No. 25-5194, 2025 WL 2155601 (U.S. July 30, 2025). Although Bates attempts to repackage his prior claims, he has raised several of these arguments before, and we have repeatedly denied relief.

Notably, on direct appeal, Bates claimed that his request for additional experts should have been granted after Dr. Crown did not testify. *See Bates IV*, 750 So. 2d at 15. This Court rejected that argument, explaining that Bates could have presented Dr. Crown's testimony but chose not to. *Id.* at 15-17. In postconviction proceedings, Bates also argued that penalty-phase counsel was ineffective for not presenting Dr. Crown's testimony. *Bates V*, 3 So. 3d at 1100. We affirmed the denial of this claim, explaining that Bates' counsel made an "informed, advised decision not to call Dr.

Crown." *Id.* at 1101. We also explained that even if counsel's performance had been deficient, Bates was not prejudiced, as Dr. Crown's testimony regarding the psychological state of Bates at the time of the murder was merely cumulative of the other expert testimony. *Id.* at 1101-02.

The same goes for Bates' argument that he should have received an evaluation from a neurologist, which his counsel concedes has previously been raised. *See Bates IV*, 750 So. 2d at 15-17. Although he now revives the argument as an Eighth Amendment claim, we reject it as procedurally barred. *See Barwick*, 361 So. 3d at 793.

To the extent that Bates is raising new issues—including that counsel should have better investigated and documented Bates' mental state and presented more witnesses to testify about Bates' mental state—he could have raised these issues in one of his four prior postconviction motions. Three decades have passed since Bates' second penalty phase, and these claims are procedurally barred. *See, e.g., Atkins v. State*, 663 So. 2d 624, 626 (Fla. 1995) (holding that a procedural bar applies to issues which should have been raised in prior collateral proceedings).

Bates asks us to excuse the procedural bars and grant him relief to avoid a manifest injustice. However, upon review of the record, and consistent with our recent precedent, we find no manifest injustice here. *See, e.g., Owen v. State*, 364 So. 3d 1017, 1026-27 (Fla.) (declining to find manifest injustice based on claims of organic brain damage), *cert. denied*, 143 S. Ct. 2633 (2023); *Dillbeck v. State*, 357 So. 3d 94, 105 (Fla.) (rejecting argument that enforcing procedural bars would result in manifest injustice), *cert. denied*, 143 S. Ct. 856 (2023).

This claim also fails on the merits. As we explained in our prior opinions, Bates presented significant evidence regarding his mental state at the time he committed the murder. *See Bates V*, 3 So. 3d at 1100-02. No additional evidence of brain damage would have overcome the significant aggravators presented against Bates. Nor does the Eighth Amendment grant "an absolute right to present mitigating evidence at any time, regardless of its availability, regardless of the defendant's diligence in locating and presenting it, and regardless of its strength or force." *Hutchinson*, 50 Fla. L. Weekly at S73, 2025 WL 1198037, at *5.

Bates also argues that the second penalty-phase court erred when it refused to inform the jury that Bates would not receive parole if sentenced to life, or that his other sentences guaranteed he would remain incarcerated for the rest of his natural life. Bates has made this argument multiple times. And each time, we have rejected it. *Bates IV*, 750 So. 2d at 9-10; *Bates V*, 3 So. 3d at 1105 n.11. Accordingly, this claim is procedurally barred.[5] *See, e.g., Zakrzewski*, 50 Fla. L. Weekly at S220, 2025 WL 2047404, at *4; *Barwick*, 361 So. 3d at 792.

Recognizing the bar that our rulings on this issue pose, Bates pivots and asks us to grant him due process relief to avoid a manifest injustice. But consistent with our conclusion above, we see no injustice (manifest or otherwise) in enforcing this bar. *See Ford v. State*, 402 So. 3d 973, 977-78 (Fla.), *cert. denied*, 145 S. Ct. 1161 (2025); *Gudinas v. State*, No. SC2025-0794, 50 Fla. L. Weekly S123, S126-27, 2025 WL 1692284, at *7-8 (Fla. June 17), *cert.*

---

5. This argument is also untimely under rule 3.851(d). *See Wainwright*, 411 So. 3d at 401.

*denied*, No. 24-7457, 2025 WL 1739159 (U.S. June 24, 2025);

*Dillbeck*, 357 So. 3d at 105.

3

Bates next argues that he has a due process right to review and rebut the evidence pertaining to his clemency proceedings. The circuit court properly denied this claim.

We have recently rejected similar arguments in post-warrant litigation. *Gudinas*, 50 Fla. L. Weekly at S127-28, 2025 WL 1692284, at *8-9 (affirming the confidentiality of clemency records); *see also Zakrzewski*, 50 Fla. L. Weekly at S221, 2025 WL 2047404, at *5 (reiterating that no specific procedures are mandated in clemency proceedings). The executive has sole discretion in exercising clemency powers and, "due to important considerations about the separation of powers, we do not second-guess the executive branch in matters of clemency in capital cases." *Zakrzewski*, 50 Fla. L. Weekly at S221, 2025 WL 2047404, at *5; *see also Sullivan v. Askew*, 348 So. 2d 312, 315 (Fla. 1977). Bates has provided no reason to revisit our prior decisions in this regard, and we affirm the circuit court's denial of this claim.

- 15 -

Bates also asserts that the length of the warrant period violates his right to due process and counsel. A thirty-day warrant period does not, in and of itself, deprive a capital defendant of the rights Bates invokes. In post-warrant litigation, due process requires a defendant be given notice and an opportunity to be heard. *Tanzi v. State*, 407 So. 3d 385, 390 (Fla.), *cert. denied*, 145 S. Ct. 1914 (2025). And the right to counsel only requires that the defendant have "meaningful access to counsel and the courts after his death warrant was signed." *Zakrzewski*, 50 Fla. L. Weekly at S220, 2025 WL 2047404, at *5. Accordingly, we have repeatedly rejected such challenges to the length of the warrant period. *Barwick*, 361 So. 3d at 789-90; *Hutchinson*, 50 Fla. L. Weekly at S72-73, 2025 WL 1198037, at *4; *Zakrzewski*, 50 Fla. L. Weekly at S220, 2025 WL 2047404, at *5; *Bell v. State*, 50 Fla. L. Weekly S155, S163, 2025 WL 1874574, at *17 (Fla. July 8), *cert. denied*, No. 25-5083, 2025 WL 1942498 (U.S. July 15, 2025). Our precedent precludes the relief Bates seeks.

As part of this claim, Bates also argues that the circuit court's denial of his lethal injection discovery requests violates his

constitutional rights. We have recently found comparable arguments to be meritless. *See Tanzi*, 407 So. 3d at 392 (rejecting argument that death-sentenced defendant had a constitutional right to public records regarding lethal injection procedures during the warrant period); *Cole v. State*, 392 So. 3d 1054, 1066 (Fla.), *cert. denied*, 145 S. Ct. 109 (2024) (same). Applying this precedent, we affirm the circuit court's denial of Bates' claim.

B

Bates also challenges the circuit court's denial of his public records requests. We review this ruling for abuse of discretion and reiterate that circuit courts possess broad discretion in deciding these matters. *See Hutchinson*, 50 Fla. L. Weekly at S72, 2025 WL 1198037, at *3; *Tanzi*, 407 So. 3d at 391; *Cole*, 392 So. 3d at 1065.

The circuit court found Bates' records requests to be overbroad and unduly burdensome. In denying relief, the court also noted that Bates failed to show how his requests related to a colorable claim for relief or provide good cause for waiting to request the records until after the death warrant was signed.

This rationale is supported by our warrant-related precedent and was reasonable based on the facts and circumstances of this

case. *See Gudinas*, 50 Fla. L. Weekly at S127-28, 2025 WL 1692284, at *9-10 (affirming denial because demands would not reasonably lead to a "colorable claim for relief" and "were overly broad and unduly burdensome"); *Tanzi*, 407 So. 3d at 391; *Zakrzewski*, 50 Fla. L. Weekly at S221, 2025 WL 2047404, at *6-7; *Hutchinson*, 50 Fla. L. Weekly at S72, 2025 WL 1198037, at *3. Accordingly, we affirm the circuit court's denial.

III

Bates also filed a petition for a writ of habeas corpus. In his petition, he raises nine additional claims. We reject them all.

A

Bates devotes much of his habeas petition to issues related to his guilt-phase proceedings. He claims that he was deprived of a fair trial and due process by multiple actions of the trial court judge in not protecting the jury from "external influences." He claims his trial counsel was ineffective. He also faults the conduct of the trial judge and the State in the 1985 resentencing proceeding (which was subsequently vacated). All of these events, Bates alleges, resulted in numerous constitutional infirmities.

Bates has had more than forty years to raise these claims, in both direct appeal and postconviction proceedings.  We find he is procedurally barred from collaterally raising them now.  *See* Fla. R. Crim. P. 3.851(e); *Gaskin v. State*, 361 So. 3d 300, 309 (Fla.) ("Habeas corpus is not to be used to litigate or relitigate issues which could have been, should have been, or were previously raised." (citing *Breedlove v. Singletary*, 595 So. 2d 8, 10 (Fla. 1992))), *cert. denied*, 143 S. Ct. 1102 (2023); *Moore v. State*, 820 So. 2d 199, 209 n.12 (Fla. 2002) (habeas claim "could have been raised on direct appeal or in a 3.850 motion and, therefore, it is procedurally barred"); *Mills v. Dugger*, 559 So. 2d 578, 579 (Fla. 1990) ("Habeas corpus is not to be used for additional appeals of issues that could have been, should have been, or were raised on appeal or in other postconviction motions.").

B

Bates also attempts to relitigate his request to interview a juror who, alleges Bates, was distantly related to Renee.  Bates previously raised this claim and we rejected it less than one year ago.  *See Bates X*, 398 So. 3d at 407-08.  Thus, this claim is procedurally barred.  Fla. R. Crim. P. 3.851(d)-(e); *Mills*, 559 So. 2d

at 579; *Schoenwetter v. State*, 46 So. 3d 535, 562 (Fla. 2010) ("Because [this] argument . . . was raised in his motion filed pursuant to rule 3.851, this claim is rejected as procedurally barred.").

### C

Bates also reasserts a claim of entitlement to DNA testing— something we have twice rejected on the merits. *Bates V*, 3 So. 3d at 1098 (concluding that DNA was not a significant part of Bates' conviction considering the weight of evidence against him); *Bates VIII*, 218 So. 3d at 427-28. This claim is procedurally barred and thus does not support relief. *See* Fla. R. Crim. P. 3.851(e); *Mills*, 559 So. 2d at 579; *Schoenwetter*, 46 So. 3d at 562.

### D

Bates next argues that, in his second penalty phase, potential jurors were improperly excused while Bates was absent from the courtroom. We rejected this argument on appeal, finding that the trial court did not err in excusing the jurors or that, in the alternative, any error would be harmless. *Bates IV*, 750 So. 2d at 15. As such, this claim is procedurally barred. *See Mills*, 559 So. 2d at 579; *Schoenwetter*, 46 So. 3d at 562.

E

Bates also challenges the HAC aggravator, arguing that it fails to perform its constitutionally required narrowing function. This claim is procedurally barred as it could have been raised on direct appeal. *Mills*, 559 So. 2d at 579; *Moore*, 820 So. 2d at 209. Moreover, we have rejected similar challenges. *Dillbeck*, 357 So. 3d at 105; *Cruz v. State*, 320 So. 3d 695, 730-31 (Fla. 2021). Bates has given us no reason to revisit our precedent in this regard.

F

In his final claim, Bates argues that this Court should grant relief based upon the alleged cumulative errors that have occurred in his proceedings. However, since Bates has not convinced us of any error, there is nothing to review on a cumulative basis. Thus, like his other claims, this one does not support relief.

IV

For the reasons discussed above, we affirm the circuit court's summary denial of Bates' fourth successive postconviction motion and the denial of his requests for public records. We also deny habeas relief. And, in light of these rulings, we deny Bates' motion

for a stay and for oral argument.  No motion for rehearing will be considered.  The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., concurs in result.

An Appeal from the Circuit Court in and for Bay County,
    Dustin Stephenson, Judge
    Case No. 031982CF000661XXAXMX
And an Original Proceeding – Habeas Corpus

Suzanne Keffer, Capital Collateral Regional Counsel, James L. Driscoll, Jr., Assistant Capital Collateral Regional Counsel, Michael T. Cookson, Staff Attorney, and Jeanine Cohen, Staff Attorney, Southern Region, Fort Lauderdale, Florida,

    for Appellant/Petitioner

James Uthmeier, Attorney General, Jason W. Rodriguez, Senior Assistant Attorney General, Charmaine M. Millsaps, Senior Assistant Attorney General, and Janine D. Robinson, Assistant Attorney General, Tallahassee, Florida,

    for Appellee/Respondent