Ms. Karen O. Gaffney Hernando County District School Board Attorney 919 North Broad Street Brooksville, Florida 34601
Dear Ms. Gaffney:
On behalf of the School Board of Hernando County, you have asked for my opinion on substantially the following question:
Is the School Board of Hernando County required to use excess funds generated from the annual capital outlay levy under section 236.25, Florida Statutes, in a manner consistent with that which was advertised at the time the funds were generated or "earned"?
In sum:
The School Board of Hernando County is required to use excess funds generated from the annual capital outlay levy under section 236.25(2), Florida Statutes, in a manner consistent with the statutory scheme in effect at the time the funds were generated or "earned".
According to information supplied with your request, a substantial surplus has been discovered in the school district's sinking fund for a general obligation bond initially issued in 1984. Over the years, the Hernando County School Board budgeted the correct levied millage for debt service and utilized the levied tax monies to pay the principal and interest due on the bonds. However, during the same time period, capital outlay funds were apparently transferred into the sinking fund in addition to the tax millage. This additional money in the sinking fund is not voter-approved levied tax money for debt service but rather is capital outlay money collected pursuant to section 236.25, Florida Statutes. You ask whether these capital outlay funds must be used for the purposes for which they were originally collected or whether they must now be utilized for the purposes set forth in the current statutory scheme.
Initially, I must advise you that there may be an accounting treatment element involved in this matter that this office has neither the expertise nor the authority to resolve. You may wish to request that the Auditor General of Florida perform an audit of these funds in order to be assured that any expenditures are legally and fiscally appropriate.[1]
In addition, it may be appropriate for you to contact the Department of Education for its assistance in this matter as Chapter 236, Florida Statutes, is part of the Florida School Code administered by the Department of Education.[2]
Article VII, section 9(a), Florida Constitution, provides that "school districts . . . shall . . . be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, for their respective purposes, except ad valorem taxes on intangible personal property and taxes prohibited by this constitution." Thus, the exercise of the power of taxation results from a constitutional authorization to school boards implemented by statute, rather than from the exercise of home rule power pursuant to section 230.03(2), Florida Statutes.[3]
Section 236.25(1), Florida Statutes, authorizes each school district desiring to take part in the state allocation of funds for current operation to levy a district school tax pursuant to the formula provided therein.[4] School boards are also authorized by this statute to levy additional millage.
Section 236.25(2), Florida Statutes, provides that, in addition to the maximum millage levy provided in subsection (1), each school board may levy a maximum of 2 mills against the taxable value for school purposes. Among the purposes authorized are new construction and remodeling projects;[5] maintenance, renovation, and repair of existing facilities;[6] purchase, lease-purchase, or lease of school buses and motor vehicles for other educational purposes;[7] payment of certain loans;[8] and payment of costs of leasing relocatable educational facilities or renting or leasing educational facilities and sites.[9]
A legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.[10] Thus, funds generated by a tax levy pursuant to section 236.25(2), Florida Statutes, must be applied to the purposes for which the tax was levied.
Further, it is a commonly accepted rule of statutory construction that legislation will not be applied retroactively unless such intent is clearly stated in the law.[11] No expression of legislative intent for retroactive application appears from the terms of section 236.25, Florida Statutes.
In the situation you have presented, the taxes were levied in prior years for the specific purposes authorized by the Legislature in earlier codifications of section 236.25(2), Florida Statutes. Those moneys were mistakenly deposited into the wrong budgetary fund. This office has issued numerous opinions concluding that tax moneys and any interest generated thereon must be used for the purposes for which they were originally levied and may not be directed elsewhere.[12]
Therefore, it is my opinion that the School Board of Hernando County is required to use excess funds generated from the annual capital outlay levy under section 236.25(2), Florida Statutes, in a manner consistent with the statutory scheme in effect at the time the funds were generated or "earned".
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgh
[1] See, s. 11.45(3)(a)1., Florida Statutes, authorizing the Auditor General to conduct audits or other engagements of "[t]he accounts and records of any governmental entity created or established by law."
[2] See, s. 228.001, Fla. Stat., providing that "[a]ll of the laws of Florida relating to public education shall be known as and shall comprise "The Florida School Code"; and s. 229.76, Fla. Stat., charging the Department of Education with "carrying out the policies, procedures, and duties authorized by law or by the [State Board of Education] or found necessary by it to attain the purposes and objectives of the school code."
[3] Section 230.03(2), Florida Statutes, states that district school boards shall operate, control, and supervise public schools in their districts and "may exercise any power except as expressly prohibited by the State Constitution or general law." See, Op. Att'y Gen. Fla. 88-01 (1988) (school district taxing power is constitutional power not Home Rule Power). Cf., Op. Att'y Gen. Fla. 00-19(2000) (counties authorized to tax by Article VII, section 9(a), Fla. Const.); Inf. Op. to Martha O. Haynie, dated Feb. 13, 1997 (charter counties treated like municipalities under Article VII, s. 9(a), Fla. Const., for purposes of levying taxes); Ops. Att'y Gen. Fla. 80-87 (1980) (municipal taxing power is not derived from s. 2(b), Art. VIII, State Const.; rather, the origin of the municipal taxing power and the limitations on its exercise are found in ss. 1(a) and 9(a), Art. VII, State Const., as amended, ss. 166.201 and166.211, Fla. Stat.; and such other special or general laws concerning other taxes as may be enacted by the Legislature; thus municipalities possess no home rule power to levy ad valorem taxes); and 79-26 (1979) (municipality has no home rule powers with respect to the levy of excise or non-ad valorem taxes and exemptions therefrom; all such taxing power must be authorized by general law).
[4] Pursuant to s. 236.25(1), Fla. Stat., districts may levy the tax if the district school tax is not provided in the General Appropriations Act or the substantive bill implementing the General Appropriations Act.
[5] Section 236.25(2)(a), Fla. Stat.
[6] Section 236.25(2)(b), Fla. Stat.
[7] Section 236.25(2)(c), Fla. Stat.
[8] Section 236.25(2)(f), Fla. Stat.
[9] Section 236.25(2)(h), Fla. Stat. And see, s. (5)(a), which provides the intent of the Legislature that, by July 1, 2003, revenue generated by the millage levy authorized by s. 236.25(2), Fla. Stat., should be used only for the purposes provided in subsection (5).
[10] Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944); Dobbs v. SeaIsle Hotel, 56 So.2d 341, 342 (Fla. 1952); Thayer v. State, 335 So.2d 815,817 (Fla. 1976).
[11] See, e.g., Bates v. State, 750 So.2d 6 (Fla. 1999), rehearingdenied, certiorari denied 121 S.Ct. 93 (2000), rehearing denied121 S.Ct. 610(2000); Middlebrooks v. Department of State, Division ofLicensing, 565 So.2d 727 (Fla. 1st DCA 1990).
[12] See, e.g., Ops. Att'y Gen. Fla. 88-01 (1988) (school board must apply interest earned on funds generated by a tax levy pursuant to s. 236.25(2), Fla. Stat., to those purposes for which the tax was levied); 00-37 (2000) (tax moneys collected pursuant to ss. 206.605 and 336.025, Fla. Stat., may be used as directed in those statutes; interest accruing on the investment of municipal fuel taxes must be used for the same purposes and projects as the taxes themselves and may not be directed elsewhere); 92-13 (1992) (interest earned on investment of surplus ad valorem funds must be used for same purposes as ad valorem taxes and cannot be considered a source of income distinct from the ad valorem taxes); 75-241 (1975) (county commissioners authorized by s. 125.31, Fla. Stat., to invest surplus public funds and, in the absence of any statutory directive as to how interest on such investments is to be credited or deposited, the income from this investment should be credited to or deposited back to the fund from which the surplus funds were taken for investment). See, generally, 85 C.J.S. Taxation s. 1064. Cf., Op. Att'y Gen. Fla. 76-29 (1976) (property appraisers commissions earned in 1970 and due and payable in 1970 should be distributed pursuant to 1969 statute which was in effect at the time the commissions were accrued, earned and due and payable).