PER CURIAM.
Kayle Barrington Bates appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.850. He also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.
STATEMENT OF THE FACTS
In 1983, Bates was convicted for the 1982 murder of Janet Renee White. We described the unfortunate facts of the murder previously, stating, “Bates abducted a woman from her office, took her into some woods behind [a State Farm Insurance office] building [where she worked], attempted to rape her, stabbed her to death, and tore a diamond ring from one of her fingers.” Bates v. State, 465 So.2d 490, 491 (Fla.1985) (Bates I).
We have previously described Bates’ procedural history in detail. See id. However, we briefly summarize it again here. Bates was convicted in 1983 of first-degree murder, kidnapping, attempted sexual battery, and armed robbery. Id. He was sentenced to death, two terms of life imprisonment, and fifteen years of imprisonment. Id. After two direct appeals[1] and a rule 3.850 motion,[2] Bates was ultimately again sentenced to death. Bates v. State, 750 So.2d 6, 8-9 (Fla.1999) (Bates IV).[3] In Bates’ most recent resentencing,
the jury recommended death by a vote of nine to three. The court found three aggravating circumstances: capital murder committed during an enumerated felony (kidnapping and attempted sexual battery); capital murder committed for pecuniary gain; and HAC. The court found two statutory mitigating circumstances: no significant history of prior criminal history (significant weight); and appellant’s age of twenty-four at the time he committed the murder (little *1097 weight). The court found eight nonstat-utory mitigating circumstances: appellant was under some emotional distress at the time of the murder (significant weight); appellant’s ability to conform his conduct to the requirements of the law was impaired to some degree (significant weight); appellant’s family background (some weight); appellant’s national guard service (little weight); appellant was a dedicated soldier and patriot (little weight); appellant’s low-average IQ (little weight); appellant’s love for his wife and children and being a supportive father (some weight); and appellant was a good employee (little weight).
After weighing the relevant factors, the court determined that the aggrava-tors outweighed the mitigators and imposed the death penalty.
Id. at 9.
At Bates’ 1995 resentencing, the State advanced essentially the same theory of the case that it put forth in the 1983 trial. It called witnesses to testify that Bates was found at the scene of the crime; that he had the victim’s blood on his clothing; that he had the victim’s ring in his pocket when arrested; that Bates had given various inconsistent confessions that implicated him in the crime; and that other physical evidence implicated him. That physical evidence included a watch pin found at the scene of the crime that was consistent with Bates’ watch; Bates’ buck knife case and hat found near the victim; two green fibers found on the victim’s clothing that were consistent with Bates’ pants; and chemically indicated semen found both on the victim’s underwear and Bates’ underwear.
The State also argued that the crime occurred in the course of a very short window. At 1 p.m., the victim was seen arriving at the State Farm Insurance Office. The victim answered the phone at State Farm upon arriving and immediately screamed. At 1:07 p.m., the State Farm Insurance agent arrived. At 1:08 p.m., law enforcement officers began to arrive. At approximately 1:20 p.m., Bates was apprehended as he emerged from the woods at the scene of the crime. The State also emphasized the dozens of bruises, abrasions, and lacerations that the victim suffered, as well as the two stab wounds and the indications that she had been strangled. The State noted that the stab wounds were consistent with the exact type of knife that Bates carried, the same type of knife that matched Bates’ knife case found at the scene of the crime.
Bates then filed the postconviction motion at issue in this case, raising eighteen claims with several subclaims. The post-conviction court held a Huff[4] hearing, granted an evidentiary hearing on two of the claims, and summarily denied the remaining claims. State v. Bates, No. 82-661 (Fla. 14th Cir. Ct. order denying relief in part and order granting evidentiary hearing filed July 29, 2005) (Huff Order). The postconviction court also denied Bates’ motion for postconviction DNA testing. See State v. Bates, No. 82-661B (Fla. 14th Cir. Ct. order denying defendant’s motion for postconviction DNA testing filed Mar. 18, 2004) (DNA Order). Finally, the post-conviction court denied Bates’ remaining two claims after conducting an evidentiary hearing. See State v. Bates, No. 82-661C (Fla. 14th Cir. Ct. order denying defendant’s motion for postconviction relief following evidentiary hearing filed Mar. 1, 2007) (Postconviction Order).
Bates has now appealed to this Court the denial of four of those claims, containing numerous subclaims, and has also filed a petition for a writ of habeas corpus. We *1098 affirm the postconvietion court’s denial of relief and deny the petition for writ of habeas corpus on both issues raised.
ANALYSIS
Motion for DNA Testing
In Bates’ first claim, he argues that the postconviction court improperly denied his motion for DNA testing of several items under Florida Rule of Criminal Procedure 3.853. He claims that he did not commit the murder and that DNA testing of hairs, blood, semen, and other evidence would prove his innocence.
In order to be entitled to postconviction DNA testing, a defendant’s motion must include “a description of the physical evidence containing DNA to be tested and, if known, the present location or last known location of the evidence and how it originally was obtained.” Fla. R.Crim. P. 3.853(b)(1). The motion must also allege that the evidence was not previously tested or that the results of such testing were inconclusive. Fla. R.Crim. P. 3.853(b)(2).
Additionally, a defendant’s motion must explain how the DNA testing requested will exonerate the defendant or mitigate the defendant’s sentence. Fla. R.Crim. P. 3.853(b)(3)-(4). A defendant’s motion “is facially sufficient with regard to the exoneration issue if the alleged facts demonstrate that there is a reasonable probability that the defendant would have been acquitted if the DNA evidence had been admitted at trial.” Knighten v. State, 829 So.2d 249, 252 (Fla. 2d DCA 2002). “The clear requirement of [the] provisions [of rule 3.853] is that a movant ... must lay out with specificity how the DNA testing of each item requested to be tested would give rise to a reasonable probability of acquittal or a lesser sentence.” Hitchcock v. State, 866 So.2d 23, 27 (Fla.2004). Further, “the movant must demonstrate the nexus between the potential results of DNA testing on each piece of evidence and the issues in the case.” Id.
Bates’ motion requested testing of biological material and identified it as being in the possession of the Bay County Clerk of Court and the Bay County Sheriffs Office. These items include blood found on the defendant’s blue shirt and the defendant’s pants, semen found on the victim’s underwear, vaginal swabs and washing, semen found on Bates’ white briefs, cotton fibers that were linked to Bates’ green pants, and head and pubic hairs. The motion alleged:
11. Mr. Bates maintains that he did not kill Ms. White. By showing that Mr. Bates was not the source of the hairs, semen or blood found on the body of Ms. White, Mr. Bates can establish that someone else committed the murder. Knighten v. State, 829 So.2d 249 (Fla. 2d DCA 2002). Likewise, testing of the rape kit, the victim’s clothing, the blue cord and Mr. Bates’ clothing can establish the presence at the crime scene of DNA profiles that are not Mr. Bates.
12. The identity of Ms. White’s assailant was litigated at trial and has been disputed during the post-conviction litigation process. The DNA testing of all the biological evidence could establish that Mr. Bates commit [sic] the crime for which he is now serving a death sentence. The DNA testing will bear “directly on [Mr. Bates’] guilt or innocence.” Zollman v. State, 820 So.2d at 1063.
In a detailed order, the postconviction court denied the motion after determining based upon the record that “there [was] no reasonable probability that DNA evidence would either exonerate the defendant or mitigate his sentence.” DNA Order at 6. The postconviction court concluded:
*1099 This was not solely a circumstantial evidence type of case. In People v. Travis, 329 Ill.App.3d 280, 264 Ill.Dec. 785, 771 N.E.2d 489 (2002)[,] DNA testing was disallowed because the defendant had admitted to committing the crimes with a co-defendant and the presence or absence of the defendant’s DNA would not conclusively establish that the defendant did not participate in the crimes. Here, the defendant, in his second statement, never mentioned the presence of a third party at the time the scissors were stabbed into the victim’s chest. The defendant never mentioned a third party being present when he carried the victim to the wood line. The defendant never mentioned a third party throwing away the scissors after removing them from the victim’s chest. Nor did the defendant mention a third party when he found the victim’s ring on the sidewalk. The defendant’s second taped statement was consistent with the evidence found at the crime scene. The defendant has failed to explain, with reference to the specific facts of this crime and the items he wishes test[ed], how the DNA testing will exonerate him or will mitigate his sentence in light of his various statements to police. See Jackson v. State, 29 Fla. L. Weekly 5-13 January 16, 2004; Galloway v. State, 802 So.2d 1173 (Fla. 1st DCA 2001).
DNA Order at 6-7.
We find that it was reasonable for the postconviction court to conclude that the results of the testing that Bates seeks in his motion would not produce “a reasonable probability” of Bates’ exoneration. See Hitchcock, 866 So.2d at 27. Bates was arrested at the scene of the crime just minutes after the victim’s death. He had the victim’s diamond ring in his pocket, and he tried to conceal it from law enforcement officers. A watch pin consistent with Bates’ watch was found inside the victim’s office, and Bates’ watch was missing a watch pin. Footprints consistent with Bates’ shoes were found behind the State Farm office building. Bates’ hat was found near the victim’s body. Two green fibers were found on the victim’s clothing — one on her blouse and one on her skirt — that were consistent with the material that Bates’ pants were made of. A knife case was found near the victim’s body, and that case was identified by various witnesses as being the exact type that Bates wore. The victim’s two fatal stab wounds were consistent with the type of buck knife that Bates carried in that case. The consistency between the stab wounds and Bates’ knife was striking; the wounds were four inches deep, and Bates’ knife was four inches long; the width of the wounds was consistent with the width of Bates’ knife; and as was testified to at the resentencing, there were abrasions at the bottom of the wound that were consistent with marks that Bates’ knife would have made. Bates’ statements to investigators and at his trial also placed him either at the scene of the crime or directly involved in the victim’s murder. Bates stated during a telephone call to his wife after his arrest that he killed a woman. This evidence was introduced at his original trial. Given this accumulation of evidence, we find no error in the postconviction court’s conclusion that DNA testing would not “give rise to a reasonable probability of acquittal.” Id.; see also Sireci v. State, 908 So.2d 321, 325 (Fla.2005) (“[I]n light of the other evidence of guilt, there is no reasonable probability that Sireei would have been acquitted.... ”).
We recognize that the prosecutor argued at trial that Bates raped the victim, and we also recognize that the DNA testing could show that Bates’ semen was not found in the victim’s vagina. However, the jury did not find Bates guilty of sexual assault but, rather, found Bates guilty of attempted sexual assault. Again, in view *1100 of the defendant’s statements as to what he did during the brief time period in which the victim’s murder occurred, which statements were consistent with attempted sexual battery, and also in view of the physical evidence in the record, we agree with the trial court that the DNA of the semen in the victim’s vagina “was not a critical link in the proof against the defendant at trial.” DNA Order at 5.
Thus, we affirm the postconviction court’s denial of Bates’ motion for DNA testing.
Ineffective Assistance of Counsel Claim — Brain Damage
In this issue, Bates raises two claims. First, Bates cursorily states that he was deprived of a competent mental health expert in violation of Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). To the extent that Bates raises this Ake claim, it is procedurally barred as having been raised and rejected on direct appeal. See Bates IV, 750 So.2d at 16-17. Second, Bates argues that his resentencing counsel was ineffective for failing to present the testimony of Dr. Barry Crown, who would have testified to Bates’ organic brain damage and to other mental health mitigation. The postconviction court held an evidentiary hearing on this claim and denied relief. We affirm that denial of relief.
Following the United States Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted). Because both prongs of the Stiickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court’s factual findings that are supported by competent, substantial evidence but reviewing the circuit court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
Dr. Crown testified at the postcon-viction evidentiary hearing that it was his expert opinion that Bates had functional metabolic brain damage. Bates claims that his resentencing counsel was ineffective for not calling Dr. Crown as a witness during his trial. The postconviction court’s order sets out this claim, stating:
In the instant case, Thomas Dunn, as sentencing counsel, did offer extensive testimony from Dr. Larson and Dr. McMahon as mental health experts to explain “why” the defendant acted the way he did. Basically[,] they testified he suffered from an extreme mental disorder or emotional disturbance at the time of the murder due to several factors. However, sentencing counsel did not offer the testimony of a third mental health expert, Dr. Crown. [Bates] claims the failure to use the testing of Dr. Crown rendered sentencing counsel’s performance ineffective. Defendant alleges Dr. Crown’s testimony that the defendant suffered from a functional organic brain impairment was essential for the jury to consider in mitigation and *1101 the failure to present this testimony was not based on a strategic decision and was prejudicial to the defendant’s case.
Postconviction Order at 2-3.
The postconviction court then found that defense counsel made a proper strategic decision not to call Dr. Crown. In its order, the postconviction court points to the following:
It is, therefore, clear that trial counsel had investigated and presented evidence in mental mitigation. As to the decision not to offer Dr. Crown’s testimony as to the existence of an organic brain impairment, the Court finds this was a strategic decision made in light of the existence of several factors. To fully understand why this Court believes this was, in fact, a strategic decision made by Mr. Dunn, it is necessary to closely review the record of the trial proceeding and the potential use of [an] MRI by the State in rebuttal of Dr. Crown’s testimony.
First, as noted previously, counsel had presented the testimony of Dr. Larson and Dr. McMahon to establish statutory mental mitigation and to answer the “why” question raised during opening statements. Dr. Crown’s testimony could have been considered cumulative except for the additional element of the existence of “organic brain impairment” and its relationship to “stress.”
Mr. Dunn did present testimony as to the defendant’s reaction to his military experiences including his exposure to stress in the riots in Miami and to tear gas. Indeed, ... Mr. Dunn used these in his hypothetical questions to his two mental health experts on the existence of any mitigating factors and to “why” the crime occurred. In response to a question on cross-examination on the significance of mace, Dr. Larson opined that “I just think it’s, I think it’s one of the variables that probably participated [in] this situation.” Mr. Dunn offered extensive testimony as to aspects of the defendant’s life experiences and to how he was acting immediately after the crime had occurred. All of this testimony was offered not only as mitigating in and of themselves but also as additional support of the mental health experts’ opinions as to why the crime occurred.
Second, had Mr. Dunn called Dr. Crown, he would have had to negate the testimony of the State’s rebuttal expert, Dr. Gregory Presser, a neurologist who had administered the MRI which showed the defendant had no organic brain damage. Mr. Dunn was fully aware of the existence of this report prior to his decision not to call Dr. Crown.
Postconviction Order at 5-7 (record citation omitted).
In addition to these facts, we note that Dr. Crown stated that he too was aware that the State had obtained an MRI that did not show any brain damage. However, he explained that a normal MRI would not prove that Bates did not have brain damage because MRIs do not show all types of brain damage. Specifically, Dr. Crown stated that Bates’ type of brain damage— functional brain damage — would not appear on an MRI. He stated that he could have provided this same testimony in 1995 at Bates’ resentencing.
As we stated previously, the postconviction court denied this claim, concluding that Bates had not demonstrated that counsel was ineffective because Bates’ trial counsel made an informed, advised decision not to call Dr. Crown. We find no error in the postconviction court’s decision, which that court explained well in its extensive order.
Even if we did conclude that counsel had been deficient in not calling Dr. Crown, we find that trial counsel not call *1102 ing Dr. Crown at the resentencing did not prejudice Bates so as to be a basis for relief under Strickland, 466 U.S. at 697, 104 S.Ct. 2052. At the resentencing, Bates’ trial counsel presented the testimony of two experienced psychologists, Dr. Larson and Dr. McMahon, who gave testimony consistent with Dr. Crown’s resen-tencing deposition and his testimony at the postconviction evidentiary hearing. Dr. Crown did add that his findings as to Bates’ deficits showed that Bates had organic brain damage and a low stress threshold. When asked by the State in his deposition “how exactly does the fact that he has these mental deficits ... relate to what happened inside that insurance office in 1982,” Dr. Crown responded, “I believe that that lowered the threshold for him in dealing with stress,” and later added, “[i]n simple terms, his higher cortical functions shut down. Or in the sense, he froze.” Thus, the crux of Dr. Crown’s testimony was that Bates had brain damage that caused him to have an inability to deal with stress, and therefore he made poor decisions while under severe stress.
Dr. Larson and Dr. McMahon testified at the resentencing that Bates had a lowered threshold for stress and that this caused him to make poor decisions. The single difference was that they did not expressly attribute Bates’ deficiencies to brain damage. Further, they testified that as a result of Bates’ lowered stress threshold and the other facts of the crime, Bates was under a substantial emotional disturbance at the time of the crime, and he was unable to conform his behavior to the requirements of the law. Thus, since Dr. Larson and Dr. McMahon testified to Bates’ lowered stress threshold, all that Dr. Crown could offer as noneumulative evidence was an opinion — unsupported by any showing on an MRI — that a basis for Bates’ condition was organic brain damage. Accordingly, Dr. Crown’s opinion testimony would have been substantially cumulative to the testimony of Dr. Larson and Dr. McMahon. To the extent that his opinion added the link to the brain damage, under the circumstances of this case, that link is not sufficient to undermine our confidence in the outcome. Accordingly, we affirm the postconviction court’s denial of this claim.
Ineffective Assistance of Counsel Claim — Failure to Create a Record
Next, Bates claims that his re-sentencing counsel was ineffective for failing to create a record of certain jury excu-sáis for hardship purposes that occurred outside the presence of lead defense counsel.[5] We find no error in the postconviction court’s determination that this claim did not provide a basis for relief. In order to successfully advance a claim that counsel was ineffective for failing to obtain or have transcribed a portion of the record, a defendant must allege specific prejudice that resulted from not having that record. See, e.g., Johnson v. Moore, 837 So.2d 343, 345 (Fla.2002) (rejecting a claim that the failure to include items in the record constituted ineffective assistance because the defendant “[did] not point to specific errors that occurred due to the omissions of this material”); cf. Jones v. State, 923 So.2d 486, 489 (Fla.2006) (“It is therefore clear that under our precedent, this Court requires that the defendant demonstrate that there is a basis for a claim that the missing transcript would reflect matters which prejudice the defendant.”); Armstrong v. State, 862 So.2d 705, 721 (Fla.2003) (“Armstrong has failed to link a meritorious appellate issue to the allegedly missing record and thus cannot establish that he was prejudiced by its absence.”). Bates did not do so. Accordingly, we af *1103 firm the postconviction court’s summary-denial of this claim.
Failure to Disclose Evidence
In the initial part of this sub-claim, Bates alleges that the failure to disclose evidence of bias and corruption in this case constituted a Brady violation.[6] To prove a Brady violation, Bates must show: (1) that favorable evidence, either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced. Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); see also Way v. State, 760 So.2d 903, 910 (Fla.2000). To meet the materiality prong, the defendant must demonstrate a reasonable probability that had the suppressed evidence been disclosed, the jury would have reached a different verdict. Strickler, 527 U.S. at 289, 119 S.Ct. 1936. “A ‘reasonable probability’ is a probability sufficient to undermine confidence in the outcome.” Way, 760 So.2d at 913 (emphasis omitted) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).
Bates points to four types of evidence not disclosed: (1) allegedly improper financial contributions to State Attorney Apple-man’s campaigns;[7] (2) corruption in Ap-pleman’s office as evidenced by a 1991-2001 allegation from the State of Florida Elections Commission that Appleman misused campaign funds for personal uses and a 1993 grand jury investigation into whether Appleman’s office was dropping or reducing charges in exchange for suspects contributing money to the State Attorney’s campaigns; (3) an indictment against Sheriff Pitts;[8] and (4) Dr. Sybers’ alleged murder of his wife while working at the Medical Examiner’s office.[9]
We find no error in the postcon-viction court’s denial of Bates’ motion in respect to these claims. First, Bates’ claim that the contributions to Appleman’s campaign were improper and that they impacted his case is meritless. As the postconviction court determined, Bates does not allege any basis upon which it could be reasonably inferred that any contributions to the State Attorney had any connection with the prosecution of Bates’ case. As the postconviction court noted in its order, the allegation of corruption in the State Attorney’s office was after both Bates’ original trial in 1983 and his 1995 resentencing. Similarly, Bates has not established how the other alleged improper acts in Appleman’s office related to his case. Therefore, these claims do not provide a basis for relief.
Bates’ last two categories of allegedly suppressed evidence likewise provide *1104 no basis for relief. The categories are: (1) an indictment against Sheriff Pitts in 1988 on charges of perjury and of having attempted to have sex with his employees; and (2) the fact that former medical examiner Dr. Sybers killed his wife and left the Medical Examiner’s office in 1992. As the postconviction court held, the Sheriffs credibility was in no way an issue in Bates’ 1995 resentencing, and the Sheriffs testimony did not relate to contested issues.[10] Further, Bates has not explained how Dr. Sybers’ conduct is relevant to Bates’ case. Dr. Sybers did not testify against Bates in either his original guilt-phase proceeding or in his 1995 resentencing hearing. Bates has not established that these two categories of allegedly suppressed evidence undermine confidence in the verdict. Accordingly, the postconviction court appropriately denied relief on these claims.
Intentional and Systematic Discrimination
Next, Bates raises various claims relating to his jury selection. First, Bates argues that the jury selection process in his case was unconstitutional. Attacks on a jury selection process must be raised on direct appeal. Robinson v. State, 707 So.2d 688, 698 (Fla.1998); Spenkelink v. State, 350 So.2d 85 (Fla.1977). Accordingly, this claim provides no basis for postconviction relief. Even if Bates’ claim was not barred, it is meritless. To establish a claim that the jury venire fails to reflect a cross-section of the community in violation of the Sixth Amendment, Bates must prove:
(1) that the group alleged to be excluded is a “distinctive” group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this un-derrepresentation is due to systematic exclusion of the group in the jury-selection process.
Duren v. Missouri, 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); see also Gordon v. State, 863 So.2d 1215, 1218 (Fla.2003) (quoting and applying Duren). Bates did not allege any facts that could establish that any discrepancy was systematic. See Gordon, 863 So.2d at 1218 (“Because Gordon has not initially established a prima facie showing in his motion that [African-Americans] were systematically excluded from the jury selection process, his claim was properly summarily denied by the trial court.”). Accordingly, this claim was meritless.
Further, to the extent Bates argues that his jury was intentionally chosen in a discriminatory manner, this claim is also not a basis for postconviction relief. Claims of intentional discrimination in jury selection should be raised on direct appeal. Robinson, 707 So.2d at 690 nn. 1, 2 (finding “Robinson’s race discrimination claim” procedurally barred for failure to raise it on direct appeal); see also Gaskin v. State, 737 So.2d 509, 512 n. 5, 513 n. 6 (Fla.1999) (finding Gaskin’s claim that he “was denied a fair trial based on a discriminatory jury selection process” procedurally barred for failure to raise it on direct appeal), receded from on other grounds by Nelson v. State, 875 So.2d 579 (Fla.2004).
Finally, Bates argues in this claim that his resentencing counsel and appellate counsel were ineffective for failing to raise these same jury selection claims at his resentencing and on appeal, respectively. In order to be entitled to an evidentiary *1105 hearing on this claim, Bates had to “set out in his motion a proper claim on the merits ... that counsel could have advanced.” Gordon, 863 So.2d at 1218. Bates failed to establish in his postconviction motion how counsel could have argued these alleged jury selection errors successfully. Because Bates has not established that these claims could be argued successfully, his counsel was not ineffective for failing to raise them. Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000). Further, we have previously rejected claims of jury discrimination couched in ineffective assistance of counsel claims. See, e.g., Robinson, 707 So.2d at 699 (“In the final analysis, most of these [jury discrimination] issues could and should have been raised on direct appeal and are procedurally barred, even if couched in ineffective assistance language.” (citation and internal quotation marks omitted)). Accordingly, this claim was appropriately summarily denied.
Remaining Claims
The remainder of Bates’ rule 3.850 claims are either procedurally barred or clearly without merit based upon this Court’s precedent in respect to these issues. These claims include Bates’ claims that (1) his counsel was ineffective for failing to argue his eligibility for a life without parole sentence;[11] (2) the death penalty is imposed discriminatorily;[12] (3) the jury interview ban in Florida is unconstitutional; [13] (4) Florida’s jury instructions improperly shift the burden to the defendant;[14] (5) the heinous, atrocious, *1106 and cruel (HAC) aggravator was improperly found;[15] (6) he is innocent of the death penalty;[16] (7) the aggravator jury instructions were vague and overbroad;[17] (8) lethal injection is cruel and unusual punishment;[18] (9) Florida’s capital sentencing statute is unconstitutional;[19] (10) counsel was ineffective for failing to renew his motion for change of venue;[20] and (11) cumulative error denied Bates a fair and impartial trial.[21] Accordingly, we affirm without further discussion the postconviction court’s denial of these claims.
Habeas Corpus Claim One—Jury Record
In Bates’ first habeas issue, he refashions one of his rule 3.850 ineffective assistance of trial counsel arguments as an ineffective assistance of appellate counsel claim.[22] Bates argues that his appellate counsel was ineffective for not ensuring that this Court had before it a complete record, including a record of the jury excusáis by the trial court that allegedly involved discrimination. Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of counsel, this Court must determine,
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
*1107 Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660 (Fla.2000). In raising such a claim, “[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based.” Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981).
We deny relief on this claim. As we previously explained, Bates has not sufficiently described how he was prejudiced by the lack of a record of the jury hardship excusáis by the trial judge. This Court has also previously rejected similar ineffective assistance of appellate counsel claims. In Thompson v. State, the defendant alleged that “this Court was not provided with an adequate record during the direct appeal because some pretrial hearings and bench conferences were not transcribed and included in the appellate record.” Thompson, 759 So.2d at 660. Thompson alleged in his postconviction motion that his trial and appellate counsel were both ineffective for failing to ensure that this record existed. We rejected Thompson’s habeas claim of appellate counsel’s ineffectiveness because Thompson had not alleged specific appealable errors in the record. Id.; see also Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993) (“Had appellate counsel asserted error which went uncorrected because of the missing record, or had Ferguson pointed to errors in this petition, this claim may have had merit. However, Ferguson ... points to no specific error which occurred during these time periods.” (emphasis added)).
While Bates has alleged generally that error occurred, as in Thompson, Bates has not pointed to specific error. Bates has not (1) explained what juror was dismissed; (2) explained why the dismissal was discriminatory; or (3) pointed to facts which support his contention. Accordingly, there is no basis for relief in this claim.
Habeas Corpus Claim Two— Photographs
In Bates’ second habeas claim, he alleges that the admission of twelve photographs was error and that his appellate counsel was ineffective for failing to raise this issue on appeal. We deny relief on this claim.
Photographs are admissible if they are probative to an issue in dispute and they are not so shocking as to defeat them value. Looney v. State, 803 So.2d 656, 668-70 (Fla.2001). Admission of photographs is a matter for the discretion of the trial court, and we will not disturb such rulings absent a clear abuse of discretion. Rodriguez v. State, 919 So.2d 1252, 1286 (Fla.2005). The photographs at issue here were relevant to issues in dispute at Bates’ resentencing. They were relevant to how this murder was committed, to support the State’s argument that the murder was committed in the course of a felony, and to support the applicability of the HAC aggravator. We have previously held that similar bases were valid grounds for admitting photographs. See, e.g., England v. State, 940 So.2d 389, 399-400 (Fla.2006). Counsel was therefore not ineffective for declining to raise this issue.
CONCLUSION
For the forgoing reasons, we affirm the postconviction court’s denial of Bates’ rule 3.850 motion, affirm the posteonviction court’s denial of Bates’ motion for DNA testing, and deny Bates’ petition for a writ of habeas corpus.
It is so ordered.
QUINCE, C.J., and WELLS, PARIENTE, LEWIS, CANADY, and POLSTON, JJ., concur.
ANSTEAD, Senior Justice, concurs in part and dissents in part with an opinion.

. See id. (Bates I); Bates v. State, 506 So.2d 1033 (Fla.1987) (Bates II).

. See Bates v. Dugger, 604 So.2d 457 (Fla.1992) (Bates III).

. In Bates' most recent direct appeal, Bates IV, he raised the following claims:
(1) whether the trial court's refusal to instruct the sentencing jury that life without the possibility of parole was a sentencing alternative to death denied [Bates] due process and a fundamentally fair capital sentencing proceeding; (2) whether the sentencing jury rendered a death verdict contrary to Florida statutory law and the trial court’s jury instructions; (3) whether the trial court erred by excluding certain mitigation evidence; (4) whether the death sentence is disproportionate; (5) whether the trial court erred by failing to consider or evaluate relevant nonstatutory mitigation; (6) whether the trial court improperly qualified the jury pool in appellant’s absence; (7) whether the trial court erred by not appointing additional medical experts to assist the defense in developing mitigation; (8) whether the trial court erred in finding each of the three aggravating circumstances; (9) whether the trial court erred by failing to allow appellant to introduce evidence of his innocence.
Bates IV, 750 So.2d at 9 n. 1.

. Huff v. State, 622 So.2d 982 (Fla.1993).

. As Bates concedes, cocounsel Hal Richmond was present for these excusáis.

.Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To the extent that Bates' postconviction motion can be read to also allege a violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), we affirm the summary denial of that claim. Bates did not explain how any of the requirements of Giglio were met in this case, and accordingly, this claim was properly summarily denied.
Further, to the extent Bates’ brief to this Court can be read to raise an ineffective assistance of counsel claim, we deny that claim as procedurally barred. Bates' postconviction motion did not discuss ineffective assistance of counsel in this claim, and accordingly, he cannot raise that argument for the first time on appeal to this Court. See, e.g., Sireci, 908 So.2d at 325.

. State Attorney Appleman's office prosecuted Bates' case.

. Sheriff Pitts was the Sheriff of Bay County where the murder was committed in this case.

. Bates alleges that Dr. Sybers assumed supervision of the Medical Examiner's office during Bates' case.

. Sheriff Pitts testified at Bates' trial that he found the victim's body, that you could not see the victim's body easily, and that Bates' truck was parked near the scene. Based on this testimony, photographs of the scene and of the truck were introduced into evidence.

. In this claim, Bates has simply reraised his direct appeal claims, asserting the same underlying error as ineffective assistance of counsel claims. Accordingly, they are merit-less and procedurally barred. Arbelaez v. State, 775 So.2d 909, 919 (Fla.2000); Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995).

. This claim is insufficiently pled. Bates has not alleged any specific facts that show that his death sentence was imposed discriminato-rily, relying instead on a general statistical analysis. We have previously rejected similar claims. See McCrae v. State, 510 So.2d 874, 879 (Fla.1987). In order to be granted relief on such a claim, the defendant "must prove that the decisionmakers in his case acted with discriminatory purpose.” McCleskey v. Kemp, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); see also Foster v. State, 614 So.2d 455, 463 (Fla.1992) (quoting this portion of McCleskey and affirming summary denial of claim similar to Bates’ claim). Bates has not done so.

. This claim is procedurally barred because it could have been raised on direct appeal. Suggs v. State, 923 So.2d 419, 440 (Fla.2005); Marquard v. State, 850 So.2d 417, 423 n. 2 (Fla.2002).

. In this issue, Bates raises four subclaims. Bates' claim that the prosecutor’s remarks improperly diluted the jury's sense of responsibility is procedurally barred because it should have been raised on direct appeal. See Hodges v. State, 885 So.2d 338, 355 (Fla.2004); Allen v. State, 854 So.2d 1255, 1258 n. 4 (Fla.2003). It is also meritless, as we have repeatedly held. See, e.g., Sochor v. State, 619 So.2d 285, 291 (Fla.1993); Turner v. Dugger, 614 So.2d 1075, 1079 (Fla.1992). Bates' claim that the standard jury instructions placed the burden on him to prove mitigation outweighs aggravation is also barred. See Turner, 614 So.2d at 1079; Engle v. Dugger, 576 So.2d 696, 703 (Fla.1991). Further, this Court has repeatedly rejected such claims. See Griffin v. State, 866 So.2d 1, 14 (Fla.2003); Sweet v. Moore, 822 So.2d 1269, 1274 (Fla.2002). Bates' claim under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), is also meritless because this Court has repeatedly held that Ring is not subject to retroactive application, see Johnson v. State, 904 So.2d 400, 412 (Fla.2005), and because of the presence of the prior violent felony aggravator in Bates’ case. See Smith v. State, 866 So.2d 51, 68 (Fla.2004); Rodgers v. State, 948 So.2d 655, 673 (Fla.2006). Bates cannot revive these claims by phrasing them as ineffective assistance of counsel claims, and they are meritless even if he could. See Allen, 854 So.2d at 1258 n. 4; Woods v. State, 531 So.2d 79, 82 (Fla.1988).

. This claim was raised and rejected on direct appeal. See Bates IV, 750 So.2d at 17. Accordingly, it is procedurally barred.

. This claim was raised and rejected on direct appeal. See Bates IV, 750 So.2d at 17. Accordingly, it is meritless. See Sochor, 883 So.2d at 788 (rejecting a claim of death penalty innocence because this Court had rejected the defendant’s attacks on the aggravators on direct appeal).

. This claim was raised and rejected on direct appeal. Bates IV, 750 So.2d at 9 n. 2. Accordingly, it is procedurally barred.

. Bates’ general attack on Florida's lethal injection protocols is meritless. This Court recently upheld the current lethal injection protocols. See Lightbourne v. McCollum, 969 So.2d 326 (Fla.2007); see also Ventura v. State, 2 So.3d 194 (Fla.2009); Tompkins v. State, 994 So.2d 1072 (Fla.2008); Henyard v. State, 992 So.2d 120 (Fla.2008). Bates has not alleged any specific deficiencies in the protocols, and accordingly, this claim was appropriately denied.

. Claims that Florida's death penalty statute is unconstitutional could have been raised on direct appeal and thus are procedurally barred. See, e.g., Gorby v. State, 819 So.2d 664, 687 (Fla.2002). Bates cannot escape that bar with a cursory ineffective assistance of counsel allegation.

. This claim is insufficiently pled. Bates did not allege any facts to support his conclusory allegations. Further, counsel cannot be held ineffective for what counsel actually did; re-sentencing counsel Dunn filed a motion for change of venue, he renewed that motion, and he requested and received individual voir dire. Bates has not explained why these actions by counsel were deficient.

. Because Bates has not shown that airy individual errors occurred, his claim of cumulative error must fail. See Atwater v. State, 788 So.2d 223, 238 n. 5 (Fla.2001); Downs v. State, 740 So.2d 506, 509 n. 5 (Fla.1999).

. To the extent that Bates’ first habeas issue argues that the record is confusing and disorganized, we deny relief on that claim. Bates has not explained how the record's disorganization prejudiced him. Our independent and complete review of the record also did not reveal any meaningful obstacles to review.