# Supreme Court of Florida

No. SC2024-1512

**DAVID KELSEY SPARRE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

December 4, 2025

GROSSHANS, J.

David Kelsey Sparre, a prisoner under sentence of death, appeals the circuit court's order summarily denying his second successive motion for postconviction relief, filed under rule 3.851 of the Florida Rules of Criminal Procedure.[1]  For the reasons that follow, we affirm.

I

In 2010, law enforcement found Tiara Pool dead in her apartment in Jacksonville, Florida.  She had been stabbed roughly

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.

ninety times. Based on evidence found in the apartment, law enforcement investigated and interviewed Sparre. After initially denying involvement, Sparre admitted to stabbing Pool to death with a knife he found in her apartment. He also confessed to taking various items from her apartment, including a gaming system.

Ultimately, the State charged Sparre with first-degree murder in connection with Pool's killing. And after hearing overwhelming incriminating evidence, a Duval County jury found Sparre guilty as charged.

At the penalty-phase hearing, the State introduced evidence in support of two aggravating circumstances—that the murder was especially heinous, atrocious, or cruel (HAC aggravator) and was committed in the course of a burglary (burglary aggravator). Sparre, for his part, elected not to present mitigating evidence. Despite this choice, defense counsel still argued that the mitigating evidence already in the record weighed in favor of a life sentence. Following deliberations, the jury recommended a sentence of death, doing so by a unanimous verdict.

After holding a *Spencer*[2] hearing, the trial court sentenced Sparre to death, finding that the State had proven the HAC and burglary aggravators beyond a reasonable doubt. These two aggravators, the court determined, outweighed the fourteen mitigators discernable from the record.[3]

We affirmed Sparre's conviction and sentence on direct appeal. *Sparre v. State* (*Sparre I*), 164 So. 3d 1183, 1202 (Fla. 2015). Sparre then asked the U.S. Supreme Court to issue a writ of certiorari and review our decision. It declined to do so. *Sparre v. Florida*, 577 U.S. 961 (2015).

In the ten years since, Sparre has mounted several challenges to his conviction and death sentence. *See Sparre v. State* (*Sparre II*), 289 So. 3d 839 (Fla. 2019) (initial postconviction motion and petition for habeas corpus), *cert. denied, Sparre v. Florida*, 141 S. Ct. 672 (2020); *Sparre v. State* (*Sparre III*), 391 So. 3d 404 (Fla. 2024) (first successive postconviction motion); *Sparre v. Sec'y, Dep't*

---

2. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

3. Under our precedent, even in cases of a mitigation waiver, the circuit court maintains the "responsibility to consider mitigating evidence in the record." *Bell v. State*, 336 So. 3d 211, 217 (Fla. 2022) (citing *Sparre v. State*, 164 So. 3d 1183, 1196 (Fla. 2015)).

*of Corr.*, No. 3:20-cv-216-TJC-JBT (M.D. Fla.), *petition for habeas corpus filed* (Mar. 4, 2020).

While his first successive postconviction motion was pending, Sparre filed a second one—the denial of which is at issue in this appeal. In it, Sparre raised three constitutional claims under the Sixth and Eighth Amendments to the U.S. Constitution and Article I of the Florida Constitution. To support these claims—which all focus on the representativeness of his jury—Sparre relies on an unpublished report (the "Gau Study"),[4] which he argues is newly discovered evidence of the jury-related constitutional violations. Specifically, according to Sparre, the Gau Study shows that his jury was not drawn from a fair cross-section of the community, thereby violating the constitutional provisions alluded to above.

The circuit court summarily denied Sparre's claims, finding them to be untimely and meritless. Sparre now appeals.

---

4. Jacinta M. Gau, *Racialized Impacts of Death Disqualification in Duval County, Florida* (2021) (considering data from 12 capital cases in Duval County from 2010 to 2018, including Sparre's case).

Sparre argues that the circuit court erred in summarily denying his second successive postconviction motion.[5] We disagree.

As our cases make clear, we affirm summary denials of successive motions if the claims raised are "legally insufficient," "procedurally barred," or "conclusively refuted by the record." *Sparre III*, 391 So. 3d at 405. Similarly, we also affirm when the defendant fails to raise a claim within rule 3.851's one-year time limit and does not establish one of the rule's timeliness exceptions. *Hutchinson v. State*, 408 So. 3d 752, 754 (Fla.), *cert. denied*, 145 S. Ct. 1980 (2025). We now apply these principles to Sparre's claims.[6]

---

5. We review summary denials of successive postconviction claims de novo. *See Owen v. State*, 364 So. 3d 1017, 1022-23 (Fla. 2023).

6. At the outset, we briefly address two issues. First, Sparre argues that the circuit court failed to hold a preliminary hearing as required by rule 3.851, which provides: "Within 30 days after the state files its answer to a successive motion for postconviction relief, the trial court *must* hold a case management conference. At the case management conference, the trial court also must determine whether an evidentiary hearing should be held and hear argument on any purely legal claims not based on disputed facts." Fla. R. Crim. P. 3.851(f)(5)(B) (emphasis added). This text's meaning is clear. Thus, it was error for the circuit court (at the urging of the

A

We begin with the timeliness of Sparre's claims.  Sparre filed

his second successive motion well beyond rule 3.851's one-year

time limit.  Thus, Sparre needs to demonstrate an applicable

exception or his claims are barred.  Recognizing this issue, Sparre

argues that the Gau Study is newly discovered evidence under rule

3.851(d)(2)(A), which excuses untimeliness if the claim is predicated

on facts which "were unknown to the movant or the movant's

attorney and could not have been ascertained by the exercise of due

diligence."  Our cases, though, are inconsistent with Sparre's

argument.

We have repeatedly held that new reports or studies, based on

previously available information, do not meet the timeliness

---

State's attorney) to sidestep this requirement.  However, based on
our thorough review of the record, we find that any error was
harmless.  *See Taylor v. State*, 260 So. 3d 151, 157-58 (Fla. 2018).

Second, Sparre argues that the circuit court failed to make
sufficient findings and conclusions for two of his claims.  To the
extent that there was error, we conclude that it was not sufficiently
preserved, *see Bryant v. State*, 901 So. 2d 810, 822 (Fla. 2005), or
properly briefed, *see Doorbal v. State*, 983 So. 2d 464, 482 (Fla.
2008).  Moreover, even if this issue had been preserved and
properly briefed, we would find any error harmless in light of our
analysis below.

exception for newly discovered evidence. *See Hutchinson*, 408 So. 3d at 754; *Dillbeck v. State*, 357 So. 3d 94, 99 (Fla. 2023); *Sliney v. State*, 362 So. 3d 186, 189 (Fla. 2023); *Melton v. State*, 367 So. 3d 1175, 1177 (Fla. 2023).

The Gau Study purports to be drawn from data collected from Duval County capital trials spanning from 2010-2018—with the majority of them occurring before 2015. At the very least, the underlying factual basis for the study was available several years before Sparre filed the current motion. *See Sparre III*, 391 So. 3d at 406 & n.4 (discussing due-diligence requirement). Accordingly, we conclude that the Gau Study does not excuse the late filing of Sparre's motion and the three claims it raises.[7] For this reason, Sparre's claims are untimely and, thus, cannot support the postconviction relief that he seeks. *See* Fla. R. Crim. P. 3.851(e)(2) (barring consideration of untimely successive claims).

---

7. Sparre also alleges Professor Michael Radelet's report confirms the work and conclusions of the Gau Study. To the extent Sparre independently relies on Professor Radelet's opinion to argue a timeliness exception, that reliance is misplaced for the reasons given above.

B

Sparre's claims are also procedurally barred. We have long held that a death-sentenced defendant is barred from asserting claims that could have been raised on direct appeal or in earlier postconviction proceedings. *See Doty v. State*, 403 So. 3d 209, 214 (Fla. 2025); *Gudinas v. State*, 412 So. 3d 701, 714 (Fla.), *cert. denied*, 145 S. Ct 2833 (2025). Jury-related claims like those brought by Sparre are no exception. *See Melton v. State*, 949 So. 2d 994, 1014 (Fla. 2006) ("Claims alleging that a defendant's jury was not a fair cross-section of the community should be raised on direct appeal."); *Bates v. State*, 3 So. 3d 1091, 1104 (Fla. 2009) (discriminatory-jury-selection claim barred in postconviction proceeding); *Truehill v. State*, 358 So. 3d 1167, 1186 (Fla. 2022) (fair cross-section claim barred in postconviction proceeding).

Consistent with what we have said above, we see no reason why Sparre could not have raised his jury-composition claims on direct appeal or in his prior postconviction motions. Consequently, his claims are now barred.

III

We have concluded that Sparre's claims are both untimely and

procedurally barred. However, even if those bars were inapplicable, we would still affirm the summary denial for the reasons we give below.

A

We first consider Sparre's Sixth Amendment claim. Sparre alleges that Duval County's death-qualification process and the State's use of peremptory strikes infringed on his Sixth Amendment right to have a jury selected from a fair cross-section of the community. A major premise of Sparre's argument is that his *actual jury*—the twelve-member body that found him guilty and recommended his death—was required to represent a fair cross-section of the community. He is wrong.

The Sixth Amendment guarantees "the right to a speedy and public trial, by an impartial jury." Amend. VI, U.S. Const. The U.S. Supreme Court has long recognized that this right includes an entitlement to be tried by a jury chosen from a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975) (discussing early case law on the subject). However, as the Supreme Court has repeatedly emphasized, this right does not guarantee that the jury actually selected—the petit jury—will

always mirror the relevant community.  *See id.* at 538; *Duren v. Missouri*, 439 U.S. 357, 364 n.20 (1979); *Lockhart v. McCree*, 476 U.S. 162, 173 (1986); *Holland v. Illinois*, 493 U.S. 474, 482-83 (1990).  The federal circuit courts have stressed this same point.  *See United States v. O'Lear*, 90 F.4th 519, 525 (6th Cir. 2024) ("To be clear, the Sixth Amendment does *not* require that the assembled jury *itself* (often referred to as the 'petit' jury) represent a fair cross section of the community. . . .  So, unlike the Fourteenth Amendment's Equal Protection Clause, the Sixth Amendment does not limit a prosecutor's use of [peremptory] challenges to excuse specific jurors." (citing *Holland*, 493 U.S. at 478-84)); *see also United States v. Fernetus*, 838 F. App'x 426, 434 (11th Cir. 2020); *United States v. Erickson*, 999 F.3d 622, 628 (8th Cir. 2021); *United States v. Colon*, 64 F.4th 589, 591 (4th Cir. 2023).

Put simply, this uniform body of case law is incompatible with Sparre's Sixth Amendment claim, which focuses on the composition and representativeness of the actual jury that tried him—not the pool from which that jury was chosen.  Indeed, nowhere in Sparre's motion does he allege that his jury pool was not representative of the relevant community.  That being the case, Sparre's Sixth

Amendment claim is without merit as a matter of law.

B

Sparre's Eighth Amendment claim fares no better. For this claim, Sparre largely repeats the same factual premises underlying his Sixth Amendment claim. He then argues some general Eighth Amendment principles. For example, he reminds us that the Eighth Amendment has been interpreted to forbid arbitrary sentences and to require that the sentencer consider a defendant's mitigating evidence. However, Sparre cites no cases where the Eighth Amendment has been applied in the jury-representativeness context. And we are aware of none. In light of this absence, and based on our own understanding of the constitutional provisions at issue, we think the Fifth Circuit was correct in saying that "empaneling an impartial jury is grounded in the Sixth Amendment and not the Eighth Amendment." *United States v. Sanders*, 133 F.4th 341, 376 (5th Cir. 2025) (relying on *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)); *cf. United States v. Brown*, 441 F.3d 1330, 1354 (11th Cir. 2006) ("Brown provides no rationale for why the identical argument would be any more persuasive if considered

- 11 -

under the rubric of the Eighth Amendment, and he offers no case law in support of his position.").[8]

## C

For his final claim, Sparre alleges that four provisions of Article I of the Florida Constitution prohibit Duval County's "discriminatory" death-qualification process and the prosecutor's peremptory strikes. Sparre mainly asserts that sections 16 and 22 of Article I jointly provide an "inviolate" right to an impartial jury, which encompasses the right to a petit jury that mirrors the relevant community. But as with the two prior claims, Sparre fails to identify any supporting precedent. Moreover, we are unaware of any cases relying on the four cited state-law provisions as authority for any petit-jury-representativeness requirement. In sum, Sparre has not persuaded us that these state-constitutional provisions support the right he seeks.

---

8. To the extent Sparre's arguments could be seen as an implicit invitation for us to recognize a new Eighth Amendment right, we must decline. *See Ford v. State*, 402 So. 3d 973, 978-79 (Fla.), *cert. denied*, 145 S. Ct. 1161 (2025).

IV

For the foregoing reasons, we affirm the circuit court's summary denial of Sparre's second successive motion for postconviction relief.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, FRANCIS, and SASSO, JJ., concur.

An Appeal from the Circuit Court in and for Duval County,
    Jonathan David Sacks, Judge
    Case No. 162010CF008424AXXXMA

Dawn B. Macready, Capital Collateral Regional Counsel, Chelsea Shirley, Assistant Capital Collateral Regional Counsel, and Nida Imtiaz, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

    for Appellant

James Uthmeier, Attorney General, and Charmaine M. Millsaps, Senior Assistant Attorney General, Tallahassee, Florida,

    for Appellee